IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

OPEN PARKING, LLC, )
       Plaintiff, )
        ) Civil Action No. 2:15-cv-976
v. )
        ) Judge Mark R. Hornak
PARKME, INC., )
       Defendant. )

## OPINION

**Mark R. Hornak, United States District Judge**

Open Parking, LLC filed this lawsuit to vindicate what it says is the harm resulting from the unlawful infringement of two patented "mobile and/or web-based smart parking applications." *See* ECF No. 8, at 3–4 ¶¶ 12, 18. The alleged infringer, ParkMe, Inc., moved to dismiss the Amended Complaint arguing that the patents at issue are directed to ineligible subject matter under 35 U.S.C. § 101. ECF No. 9. The parties fully briefed the issues and the Court heard oral argument on March 8, 2016. ECF Nos. 10, 28, 30, 32, 38, 39.

For the reasons that follow the Court concludes that Open Parking's patents are indeed directed to ineligible subject matter under § 101. Therefore, ParkMe's Motion to Dismiss will be granted.

### I. BACKGROUND

Inventor Robert Racunas, Jr. faced a dilemma. Each weekday morning he drove from his home in Northern Virginia to the Vienna Metro Station and each weekday morning he found himself in the precarious position of circling a nearly-full parking lot. *See* ECF No. 28, at 8. On particularly bad days, he was forced to park in an adjacent lot and take a shuttle to the Metro. *Id.* at 9. Occasionally, in a cruel twist of fate, Inventor Racunas would see open parking spaces in

the Metro lot *after* he had parked elsewhere and shuttled in. *Id.* There being no app for navigating this rat race, Inventor Racunas took matters into his own hands.

He eventually filed for and was granted two patents: United States Patent Nos. 6,501,391 ("'391 Patent") and 6,750,786 ("'786 Patent"). ECF No. 8-1. As Open Parking would have it, the "inventive concept" of the patents is as follows:

> A portable wireless remote graphical display device structured and arranged to access the Internet from home, office, vehicle, or any other location comprising a specific software application on the portable wireless remote graphical display device for commanding a server at a parking lot or remote location to transmit parking lot occupancy data corresponding to one or more parking lots over the Internet to the portable wireless remote graphical display device and for receiving and displaying the parking lot occupancy data on the portable wireless remote graphical display device as a real-time representation of the parking lot indicating vacant parking spaces within the parking lot.

ECF No. 28, at 9.

The '391 and '786 patents are essentially directed to letting commuters like Inventor Racunas know whether there are any open parking spaces before they arrive at a lot. To do that, the patents describe a system that uses parking space detectors (like position, motion, and weight detectors, video cameras, and the like) equipped with communication devices to send signals over the Internet that are received by a portable device, presumably operated by a driver. Displayed on that device would be something that indicates to the driver whether there are any open parking spaces in the lot, or not.

In late 2015, Open Parking filed this patent infringement suit against ParkMe, Inc. alleging that ParkMe infringed both the '391 and '786 patents by dealing in "hardware and/or software implementing Defendant's mobile and/or web-based smart parking applications." ECF

No. 8, at 3–4 ¶¶ 12, 18. ParkMe in turn moved to dismiss the Amended Complaint, arguing that the patents are invalid under 35 U.S.C. § 101. ECF No. 9.

For the purposes of this Motion, the Court will examine what the parties have designated as the representative claim. *See* ECF No. 28, at 9; ECF No. 30, at 7. That claim is Claim One of the '786 Patent and reads as follows:

> A parking system comprising:
> a wireless communications device capable of accessing the Internet; and
> a software application for receiving parking data transmitted over the Internet to the wireless communications device, wherein
> the parking data can be rendered by the wireless communications device as a substantially real-time representation indicating an occupancy condition of an available parking lot, and
> the occupancy condition changes according to presence and absence of vacant parking spaces within the available parking lot.

'786 Patent col. 6 ll. 18–31.[1]

## II. **LEGAL STANDARD**

Federal courts must dismiss cases that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Complaints therefore must allege facts "sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Thus, in a patent infringement case, patent eligibility takes center stage. If the patent that was allegedly infringed is invalid because it is directed to patent-ineligible subject matter, the

---

[1] In its Supplemental Brief, Open Parking "does not imply and explicitly does not concede that all claims fall together" even though it stipulated to the representative claim. ECF No. 38, at 6. For the purposes of assessing a § 101 challenge however, courts routinely address one representative claim and this Court will do so here. *See, e.g.*, *Alice Corp. Pty. Ltd. v. CLS Bank Int'l et al.*, 134 S. Ct. 2347, 2359–60 (2014) (finding 208 claims to be patent-ineligible based on analysis of one claim); *Mortgage Grader, Inc. v. First Choice Loan Servs., Inc.*, 811 F.3d 1314, 1324 n.6 (Fed. Cir. 2016) (taking up a § 101 challenge but not examining all claims); *Intellectual Ventures I, LLC v. Erie Indem. Co. et al.*, 134 F. Supp. 3d 877, 907–08 (W.D. Pa. 2015) (collecting cases to support analyzing only representative claims in this context).

complaint does not state a claim upon which relief can be granted. The 12(b)(6) stage, then, is the proper one at which to address § 101 patent eligibility challenges. *See Intellectual Ventures I, LLC v. Erie Indem. Co. et al.*, 134 F. Supp. 3d 877 (W.D. Pa. 2015) (resolving patent eligibility on a motion to dismiss).

### III. DISCUSSION

Section 101 patent eligibility challenges are resolved using the framework set out by the Supreme Court in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l et al.*, 134 S. Ct. 2347 (2014). Open Parking has raised the issue of claim construction, which the Court will take up first before analyzing both parts of the *Alice* test.

#### a. Claim Construction

"The general rule is . . . that terms in the claim are to be given their ordinary and accustomed meaning." *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). And "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).

Open Parking proposes the following constructions:

| Representative Claim | Construction |
|---|---|
| 1. A parking system comprising: | *A parking system comprising:* |
| a wireless communications device capable of accessing the Internet; and | *a wireless PDA and/or wireless mobile telephone capable of accessing the Internet or other handheld wireless device capable of communications including Internet access; and* |
| a software application for receiving parking data transmitted over the Internet to the wireless communications device, wherein | *a software program designed for receiving parking data transmitted over the Internet to the wireless PDA and/or wireless mobile telephone capable of accessing the Internet or other handheld wireless device capable of* |

| | |
|---|---|
| | *communications including Internet access, wherein* |
| the parking data can be rendered by the wireless communications device as a substantially real-time representation indicating an occupancy condition of an available parking lot, and | *the parking data can be processed by the wireless PDA and/or wireless mobile telephone capable [of] accessing the Internet or other handheld wireless device capable of communications including Internet access to visually display a substantially real-time representation of an available parking lot indicating a status of how much occupancy or vacancy the available parking lot has, and* |
| the occupancy condition changes according to presence and absence of vacant parking spaces within the available parking lot. | *the status of how much occupancy or vacancy the available parking lot has indicated in the substantially real-time representation changes according to presence of vacant parking spaces within the available parking lot and changes according to absence of vacant parking spaces within the available parking lot.* |

ECF No. 38, at 6–7. These constructions bear some resemblance to the constructions offered in Open Parking's Brief in Opposition to the Motion to Dismiss. *See* ECF No. 28, at 17–18. They are, however, different. Because they are the latest and seemingly optimal constructions Open Parking has to offer, the Court will assume it means it, and proceed with consideration of the constructions from the Supplemental Brief.[2]

Whether or not to actually construe the claims at all, however, is a horse of a different color. Open Parking does not dispute, because it cannot, that this Court can decide § 101 eligibility at this stage without formal claim construction. ECF No. 28, at 14; *see also Bancorp Servs. LLC v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012)

---

[2] Open Parking's Supplemental Brief is largely a broadside against the Supreme Court's decision in *Alice*. And though this Court is vested with substantial powers, sidestepping Supreme Court decisions is not among them. For Open Parking, the unfortunate effect of that decision is to invalidate many software patents, but arguing that because the software is executed on physical devices does not transmute a patent-ineligible idea into a patent-eligible one. Computers are obviously integral to the functionality of software, indeed software is worthless without a device on which it can be executed. But this is not a case involving a shovel with a new blade, rather it involves software. *See* ECF No. 38, at 10 n.20. The Supreme Court has instructed us that software patents must be held to the stringent *Alice* requirements in a § 101 challenge.

("claim construction is not an inviolable prerequisite to a validity determination under § 101"); *Intellectual Ventures I*, 134 F. Supp. 3d at 908 ("claim construction is desirable, unless in reviewing the patents at issue, a district court concludes that it isn't."). Instead, Open Parking marshals all sorts of arguments about why claim construction is, in its view, both desirable and necessary here. *See, e.g.*, ECF No. 28, at 14–18; ECF No. 38, at 4–7. None of the arguments are availing.

First, the law remains that the terms in patent claims are generally given their ordinary and accustomed meanings. *See Johnson Worldwide Assocs.*, 175 F.3d at 989; *Renishaw PLC v. Marposs Societá Per Azioni*, 158 F.3d 1243 (Fed. Cir. 1998). And it is not particularly exceptional when "the ordinary meaning of claim language . . . [is] readily apparent even to lay judges." *Phillips*, 415 F.3d at 1312–13 (en banc). In those cases, claim construction is not really "construction" at all, but "little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314; *see also Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (holding that the claims did "not require elaborate interpretation"). Indeed, the Federal Circuit "has repeatedly held that a district court is not obligated to construe terms with ordinary meanings." *O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

Second, it appears to the Court that Open Parking's "constructions" are really just attempts to rewrite (and narrow) the actual claims. Open Parking couches its proposed "constructions" as those most favorable to it or those that contextualize the claim language such that they demonstrate how a person of ordinary skill in the art would have understood it when the patents were filed in 1999. ECF No. 38, at 4–5 (citing *Phillips*, 415 F.3d at 1313).[3] The revised

---

[3] Open Parking also argues that because "there is no expert testimony or extrinsic evidence from 1999 to help answer factual and claim construction issues" and because it says "it is unclear whether § 101 is factual and/or

6

proposed constructions in Open Parking's Supplemental Brief rely heavily on what Open Parking represents to be dictionary definitions from a Microsoft Computer Dictionary, Fourth Edition from May 1999 and a Microsoft Computer Dictionary, Fifth Edition from March 2002. ECF No. 38, at 5 n.3. Open Parking says this is appropriate because they supposedly contain contemporaneous meanings of the words used in the claims and thus lead to the ordinary and customary meanings of the terms. *Id.* at 6. The only authority cited for this proposition is the Federal Circuit's decision in *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371 (Fed. Cir. 2015), and even that is buried in a footnote. Open Parking is correct in that the Federal Circuit in *Ariosa* focused its inquiry on what was known in 1997 when that patent was filed. *See Ariosa Diagnostics*, 788 F.3d at 1377. But the Federal Circuit held that "appending routine, conventional steps to a natural phenomenon, specified at a high level of generality, is not enough to supply an inventive concept," at the equivalent of *Alice* step two. *Id.* at 1378. It further noted that the "routine, conventional steps" were already well-known when the patent was filed. So *Ariosa* does not stand for the broad proposition that patent language is to be construed only with respect to the technologies existing at the time the patent was filed. The patents here use terms like "general purpose computer," '391 Patent col. 3 ll. 60–67, and given how it now seeks to refine and narrow the patents via "construction," there can be little doubt that Open Parking would file an infringement action if its product were used on an iPad, iPhone, Apple Watch, or some other device manufactured after 1997. Thus, the Court need not cabin its understanding of the claim language to an understanding of technology that existed in 1997.

---

legal," the Court should engage in formal claim construction before proceeding to the *Alice* analysis. ECF No. 38, at 4–5. Unfortunately for Open Parking, however, the law is clear. "Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010). Moreover, courts need not necessarily consider expert evidence in a § 101 challenge at the pleadings stage. *See Rothschild Location Techs. LLC v. Geotab USA, Inc.*, No. 6-15-cv-00682, 2016 WL 2847975, at *2–3 (E.D. Tex. May 16, 2016) (citing *Mortgage Grader*, 811 F.3d at 1325).

Finally, the guidance provided by the Federal Circuit makes clear that courts "must presume that the terms in the claim mean what they say, and unless otherwise compelled, give full effect to the ordinary and accustomed meaning of claim terms." *Johnson Worldwide Assocs.*, 175 F.3d at 989 (collecting cases). And "to overcome this heavy presumption in favor of the ordinary meaning of claim language," a patentee must have either (1) "chosen to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term," or (2) chosen terms that "so deprive the claim of clarity that there is no means by which the scope of the claim may be ascertained from the language used." *Id.* at 989–90. "In these two circumstances, a term or terms used in the claim invites—or indeed, requires—reference to intrinsic, or in some cases, extrinsic, evidence." *Id.* at 990. No such invitation or requirement exists in this case.

The '391 and '786 patents themselves belie any ambiguity in the terms that would require formal claim construction. They define a "remote display device" as "any type of computer, computer system, server, settop box or other type of Internet accessible device." *See* '391 Patent col. 3 ll. 36–38. They further use terms like "general purpose computer," *see* '391 Patent col. 3 ll. 61–62, and browser applications (like Netscape Navigator and Internet Explorer) that were then well-known. '786 Patent col. 4 ll. 41–43.[4] To the extent the Inventor could be his own lexicographer, there are no explicit definitions of claim terms that compel Open Parking's proposed constructions, and the claim language itself is certainly not so lacking in clarity such that there is no means by which the scope of the claim may be ascertained.

At bottom, the purpose of claim construction is to "determin[e] the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996). The Court concludes that the ordinary meaning

---

[4] These broad references to a wide variety of essentially ubiquitous and generic devices and software also generates the broad preemption concerns identified by the Supreme Court in *Alice*.

and scope of the claims in both Patents is readily apparent so no formal claim construction is necessary. Thus, the Court will give the claim language its full, ordinary and accustomed meaning and proceed with the *Alice* analysis.

**b.** *Alice Step 1*

**i. The Law**

The first step in deciding a § 101 eligibility challenge is to determine whether the claims at issue are "directed to a patent-ineligible concept," that is, whether they are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012)). Abstract ideas may be "preexisting, fundamental truth[s]" (like mathematical equations), "method[s] of organizing human activity," or "longstanding commercial practice[s]" (like intermediated settlement or risk hedging). *Alice*, 134 S. Ct. at 2356. Essentially, the *Alice* step one inquiry boils down to: what are the claims generally trying to achieve? *See Intellectual Ventures I*, 134 F. Supp. 3d at 897–98 (collecting cases). More specifically, as recently clarified by the Federal Circuit, "a relevant inquiry at step one is 'to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea.'" *TLI Comms. LLC v. AV Automotive, L.L.C.*, 2016 WL 2865693, at *4 (Fed. Cir. May 17, 2016) (quoting *Enfish, LLC v. Microsoft Corp.*, No. 2015-2044, 2016 WL 2756255, at *11 (Fed. Cir. May 12, 2016)). Of course, this Court must be careful not to oversimplify claims because "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice*, 134 S. Ct. at 2354 (quoting *Mayo*, 132 S. Ct. at 1293).

This step is a challenging one because the "Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of

the *Mayo/Alice* inquiry." *Enfish*, 2016 WL 2756255, at *4. Indeed, the Supreme Court and the Federal Circuit instruct that courts should "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Id.*

Section 101 jurisprudence continues to develop rapidly. Here, the Federal Circuit's recent decision in *TLI Communications* is especially instructive. There, the Federal Circuit held that a patent that related "generally to an apparatus for recording of a digital image, communicating the digital image from the recording device to a storage device, and to administering the digital image in the storage device" was directed to "the abstract idea of classifying and storing digital images in an organized manner and fail[ed] to add an inventive concept sufficient to confer patent eligibility." *TLI*, 2016 WL 2865693, at *1–2. The Federal Circuit concluded that the representative claim, on its face, was directed to that abstract idea despite requiring "tangible components such as 'a telephone unit' and a 'server.'" *Id.* at *3. Those physical devices merely "provide[d] a generic environment in which to carry out the abstract idea." *Id.* In other words, the physical components of the claims were just "conduits" for the abstract idea. *Id.* at *4. Likewise, the "server" recited in the specification was described "simply in terms of performing generic computer functions such as storing, receiving, and extracting data." *Id.*

In *Preservation Wellness Techs., Inc. v. Allscripts Healthcare Solutions, et al.*, No. 2:15-cv-1559, 2016 WL 2742379, at *13 (E.D. Tex. May 10, 2016), the Eastern District of Texas held that patents for maintaining medical records using a network were patent-ineligible under § 101 because they were directed to the "clearly abstract idea" of "securely managing medical records and providing patients and physicians with differential access to those records." The patents claimed a system that maintained the medical records on a central computer server, allowing remote access by authorized persons. *Id.* at *3. The system also claimed a "two-way firewall"

feature that allows patients to do some tasks and doctors only to do others. *Id.* at *4. The court held that the concepts embodied in the claims—record access and management and allowing secure and private access to data—have been found to be abstract in other cases. *Id.* at *7 (collecting cases).[5]

Similarly, in *Mobile Telecomms. Techs., LLC v. Blackberry Corp.*, No. 3:12-cv-1652, 2016 WL 2757371, at *3 (N.D. Tex. May 12, 2016), the court held patent-ineligible several claims which it held were directed to the abstract ideas of "sending and storing messages" and "coded communication."[6] And in *eResearchTechnology, Inc. v. CRF, Inc.*, No 15-918, 2016 WL 2643264, *12 (W.D. Pa. May 10, 2016), claims directed to "using an electronic device to obtain clinical trial data that would otherwise be collected by pen-and-paper diary, and analyzing the data to decide whether to prompt action" were patent-ineligible under the *Alice* test. Importantly, the fact that the invention was limited to clinical trials did not prevent the claims from being abstract. *Id.* at *13 (citing *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010) for the proposition that the ban on patenting abstract ideas cannot be circumvented by limiting them to a particular technological environment).

On the other hand, in *Enfish*, the Federal Circuit found that patents related to a "self-referential" database were not directed to an abstract idea. *Enfish*, 2016 WL 2756255, at *2. Instead, it held that the patents were directed to "an innovative logical model for a computer database . . . [*i.e.*,] a model of data for a computer database explaining how the various elements of information are related to one another." *Id.* at *1. The patents provided a specific

---

[5] The court also held that the patents lacked any "inventive concept" sufficient to withstand the *Alice* step two bar. *Preservation Wellness*, 2016 WL 2742379, at *13.

[6] At *Alice* step two, the court held that the claims "do not solve problems specifically arising in the realm of computer networks, and technology did not create the problems addressed." *Mobile Telecomms.*, 2016 WL 2757371, at *5. As such, the patents lacked any inventive concept.

11

improvement in the way computers operate—the self-referential table—which the Federal Circuit concluded was not an abstract idea. *Id.* at *5. The improvement went beyond that generic "storing, organizing, and retrieving [of] memory in a logical table" because it was specifically limited to a self-referential table for a computer database. *Id.* at *6. Importantly, the Federal Circuit distinguished between the patentable claims in *Enfish* and others that simply add conventional computer components to well-known business practices or mathematical formulae. *Id.* at *7–8 (collecting cases).

With that context in mind, the Court will turn to the '391 and '786 Patents at *Alice* step one.

### ii. Application to the '391 and '786 Patents

ParkMe argues that the claims in the '391 and '786 Patents are generally trying to achieve the transmission, reception, and display of data regarding open parking spaces. ECF No. 30, at 8. And according to ParkMe, that amounts to an abstract idea because it is "directed to shuffling data from one place to another," and because it "describes a longstanding practice that could be completed with pencil and paper." *Id.* at 9.

Open Parking counters by reciting its inventive concept, described in Section I above. They also argue that "specific computer devices, specific software, specific computer functionality, and specific computer implementation, which were not ubiquitous, conventional, well-known, or generic at the time of invention" make the idea non-abstract. ECF No. 28, at 23. Open Parking further argues that the patents are not directed to "finding an open parking space" or "looking at a parking lot," as ParkMe characterizes them, rather Open Parking says that they are directed to significant technological improvements over what was known at the time of the invention. *Id.* at 23–24. Open Parking maintains that the patents are directed to "concrete

technological solutions that facilitate the task of finding parking and can achieve a 'new and useful' result of allowing a commuter [to] use an 'open parking' mobile app on a smartphone to remotely view a changing occupancy condition of a parking lot when commuting and before arrival so that the commuter can readily locate an available parking space or decide to search for parking elsewhere." *Id.* at 23.

Of course, the "pen and paper" test *is* a valid method to evaluate abstraction.[7] *See, e.g., CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) ("[a]ll of [the claim's] method steps can be performed in the human mind, or by a human using a pen and paper" and are therefore unpatentable); *OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-1622, 2015 WL 1535328, at *4 (N.D. Cal. Apr. 6, 2015) (using this analytical tool to find the claims directed to an abstract idea and collecting cases that have also applied it in the computing context). The "pen and paper" framework is also useful here in determining whether these patents are directed at an abstract idea. There exists a meaningful limitation in the representative claim: the rendering of the parking lot occupancy is "substantially real time." Therefore, the function could not be performed by a parking lot attendant handing out maps, as ParkMe suggests. *See* ECF No. 30, at 9. However, the "occupancy condition" of a parking lot, *i.e.* data about whether there are any open spots, could be rendered by humans using a pen and paper. Perhaps there is an attendant at the gate who looks around the lot and writes the number of open spaces on a chalkboard for passersby to see. Or there could be a simple "vacancy/no vacancy" sign outside of a lot, or a "real time" electronic sign showing the then-existing number of open spaces, based on the entry/exit of cars. These examples are means to the same end: transmitting to commuters

---

[7] Open Parking appears to suggest that the "pen and paper" test requires a showing that pen and paper were actually used somewhere, at some time, to carry out the potentially abstract idea. ECF No. 28, at 29. That is not the law. *See, e.g., CyberSource*, 645 F.3d at 1372; *OpenTV*, No. 14-cv-1622, 2015 WL 1535328, at *4.

whether there are any open spots in a parking lot, via a graphical display and in substantially real time.

This conclusion is bolstered by a common sense reading of the claims. Giving the claim language its ordinary and accustomed meaning, the Court concludes that what the patents are really trying to get at is the transmission of substantially real time data of whether there are any open parking spaces in a given lot. Essentially, the patents are aimed at moving data (open parking spots or not, and maybe where they are) from one place (the parking lot) to another (the driver's location). That is an abstract idea. *See Content Extraction & Trasmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (holding that claims were patent-ineligible because they were directed to the abstract idea of data recognition and storage); *Intellectual Ventures I*, 134 F. Supp. 3d at 911 (holding that a patent was directed to the abstract idea of "gathering, storing, and acting on data . . . .").

Information about open parking spaces has long been broadcast to drivers who cannot actually see the open spaces. For example, in many major cities, parking garages in which spots are shielded from view have displays on the outside indicating if (and in some cases how many) spots are vacant. And a drive through the streets outside PNC Park on the evening of a Pirates game reveals any number of people with orange flags waving to cars to indicate there are vacant spots in their lots.[8] Thus, these patents are directed to a longstanding method of organizing human activity that is more akin to the maintenance of medical records or the collection of clinical trial data than to a unique computer database tool. *See Enfish*, 2016 WL 2756255, at *2; *Preservation Wellness*, 2016 WL 2742379, at *3; *eResearch Technology*, 2016 WL 2643264, at *13.

---

[8] Presumably, those flag wavers stop waving when the lots are full, further corroborating the "substantially real-time" nature of their data transmission.

### c. *Alice* Step 2

#### i. The Law

The answer at *Alice* step one being yes, the Court will proceed to *Alice* step two: "[c]onsidering the elements of each claim both individually and as an ordered combination," are there "additional elements" which present an "inventive concept" that "transform the nature of the claim into a patent-eligible application" by demonstrating it is "significantly more than a patent upon the ineligible concept itself"? *Alice*, 134 S. Ct. at 2355. Clearing the *Alice* step two hurdle requires more than just stating an abstract idea and adding the words "apply it." *Id.* at 2357. The claims must contain additional features that amount to more than "well-understood, routine, conventional activity." *Mayo*, 132 S. Ct. at 1298.

"It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *TLI*, 2016 WL 2865693, at *5. And "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358. "[F]undamental economic and conventional business practices are often found to be abstract ideas, even if performed on a computer." *Enfish*, slip. op. at 10 (citing *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362–63 (Fed. Cir. 2015)).

Courts have also looked to the machine-or-transformation test which, while not the sole test governing § 101 analyses, can provide a "useful clue" at *Alice* step two. *See Bancorp Servs.*, 687 F.3d at 1278. Applying that test can reveal that claims are directed to patent-eligible subject matter if "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008).

The most recent guidance from the Federal Circuit on this point came in *TLI Communications*, 2016 WL 2865693. There, the recitations in the claims of a "server," a "telephone unit," and "image analysis unit," and a "control" unit were not enough to surmount the *Alice* step two bar. Those sorts of "vague, functional descriptions of server components [were] insufficient to transform the abstract idea into a patent-eligible invention." *Id.* at *7.

Likewise in *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014), the Federal Circuit held that invoking the Internet did not save claims directed to a method for monetizing and distributing copyrighted products (citing *Cybersource*, 654 F.3d at 1370, which "reason[ed] that the use of the Internet to verify credit card transaction does not meaningfully add to the abstract idea of verifying the transaction"). Importantly, the Federal Circuit noted that "the transfer of content between computers is merely what computers do and does not change the analysis." *Id.* at 717.

News from the Federal Circuit has not been all bad for software patent holders however. In *DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245, 1248 (Fed. Cir. 2014), that court upheld claims that were directed to "systems and methods of generating a composite web page that combines certain visual elements of a 'host' website and content of a third-party merchant." The claims did "not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution [was] necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* at 1257; *see also BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC, et al.*, No. 2015-1763, 2016 WL 3514158, *7 (Fed. Cir. June 27, 2016) (same).

So in general, "when a patent holder seeking to establish § 101 eligibility for an otherwise abstract idea points to a particular element of a patent's claims as solving a computer-centric problem, the claims must specify how that solution works." *Intellectual Ventures I*, 134 F. Supp. 3d at 916 (citing *Source Search Techs., LLC v. Kayak Software Corp.*, 111 F. Supp. 3d 603, 611 (D.N.J. 2015)). Otherwise, a lack of computer-centricity in the problem being solved or the existence of a brick and mortar analog to the solution will be fatal under § 101.

### ii. Application to the '391 and '786 Patents

Open Parking contends that the '391 and '786 Patents pass muster under *Alice* step two because the otherwise-abstract ideas are limited to "specific emerging handheld wireless devices capable of communications including Internet access." ECF No. 38, at 17. Open Parking further argues that the patents are designed to transmit *parking* data (presumably as opposed to generic data), and besides, you can't transmit that data without a computer. *Id.* at 16–17. And that, according to Open Parking at least, makes these Patents more like those upheld in *DDR* than those that simply implement an abstract idea on a generic computer.[9] The essence of Open Parking's argument is that when these inventions were patented, mobile technology was in its infancy and because these patents were limited to that emerging field, they are patentable.

For its part, ParkMe counters that the claims in the '391 and '786 Patents "recite only generic forms of technology," pointing to the claim language itself which calls for "a wireless device" and "a software application for receiving parking data transmitted over the Internet." ECF No. 39, at 16.

To start, *TLI Communications* seems to facially rebut Open Parking's argument that because the claims mention some computer components there is sufficient transformation under

---

[9] Open Parking also heavily emphasizes the novelty and unconventional-ness of the invention. *See* ECF No. 38, at 17. That is all well and good, but matters not for the § 101 inquiry which focuses only on abstractness and transformation.

17

*Alice* step two. *See* ECF No. 38, at 5–11; *TLI Comms.*, 2016 WL 2865693, at *7. Just because the abstract ideas in these patents are to be carried out on some mobile device (even a brand spanking new one in 1999), does not save them from having to pass through the *Alice* sieve. At bottom, the software is being executed on a generic computer. And we know that merely invoking the Internet cannot save the '391 and '786 Patents because transferring data and content—even data and content about parking availability—is "just what computers do." *See Ultramercial*, 772 F.3d at 717.

Nor are these Patents directed to some other problem that is unique to the Internet. *Cf. DDR*, 773 F.3d 1245 (upholding patent-eligibility at *Alice* step two because the patent provided an Internet-based solution to solve a problem unique to the Internet and did not foreclose other ways of solving the problem while reciting specific steps that resulted in a departure from the routine and conventional sequence of events after the click of a hyperlink advertisement). The seemingly ubiquitous problem of finding open parking spaces during the busy morning rush necessarily exists outside of the Internet, and outside computers altogether for that matter. Transmitting that data over the Internet to mobile devices might be useful, but it does not "override[] the routine and conventional sequence of events" pertaining to finding a parking space. *See DDR*, 773 F.3d at 1258. The process is still (1) look for open space, (2) drive to open space, (3) park in open space. With these patents, the driver merely looks to her mobile device rather than through her windshield.

Finally, contrary to Open Parking's suggestion, the machine-or-transformation test does not save these patents either. Limiting the application of these claims to mobile devices capable of accessing the Internet is really just limiting them to one selected form of generic computer technology. *See Ultramercial*, 772 F.3d at 716 ("Narrowing the abstract idea of using advertising

as a currency to the Internet is an 'attempt[] to limit the use' of the abstract idea 'to a particular technological environment,' which is insufficient to save a claim.") (citing *Alice*, 134 S. Ct. at 2358); *see also Inventor Holdings, LLC v. Gameloft, Inc.*, 135 F. Supp. 35 239, 255 (D. Del. 2015) ("Although the claims . . . are limited to a particular technological environment—*i.e.*, mobile devices—this does not save them from being ineligible for patentability."). At bottom, the '391 and '786 Patents describe the shuffling of one type of data over the Internet and with generic computer technology. Those basic computer functions are not directed to a computer-centric problem and thus are not patent-eligible under *Alice* and § 101.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the '391 and '786 patents are directed to patent-ineligible subject matter. Therefore, ParkMe's Motion to Dismiss will be granted, and the Amended Complaint will be dismissed with prejudice.

An appropriate Order will issue.

s/ Mark R. Hornak  
Mark R. Hornak  
United States District Judge

Dated: June 30, 2016  
cc: All counsel of record